UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEAVER et al. | CIVIL ACTION |
| VERSUS | NO: 10-1523 |
| SEATRAX OF LOUISIANA, ET AL. | SECTION: "J" (5) |

**ORDER AND REASONS**

Before the Court is Plaintiff's **Motion to Remand (Rec. Doc. 7)** and supporting memoranda, as well as Defendants Mariner Energy's and Seatrax's **Memoranda in Opposition to Plaintiff's Motion to Remand (Rec. Docs. 11, 12),** and Plaintiff's **Reply Memorandum (Rec. Doc. 16).**

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Plaintiff, Robert Teaver ("Teaver"), was hired by Seatrax on June 18, 2009 to work as a crane operator/installer. Seatrax is a company whose primary business appears to be the installation and operation of cranes, many of which are located on offshore oil platforms. Teaver began work on June 21, 2009 and was given the task of accompanying a group of Seatrax employees to a Mariner offshore platform in order to decommission a Seatrax crane and to bring it back to shore. The platform was located at South Marsh Island 136B on the Outer Continental Shelf in the

Gulf of Mexico, approximately ninety miles from the Louisiana Coast. The vessel, *Cheramie BoTruc #34* ("*Cheramie*"), was owned by L & M BoTruc Rental, Inc. and was time-chartered by Mariner Energy, Inc. (Ex. B to Mariner Energy's Mem. in Opp'n. to Pl.'s Mot. to Remand).[1]

Teaver met his fellow employees and the utility vessel on which they would travel in Freshwater City, Louisiana at approximately noon on June 21, 2009, which was his first day on the job. Teaver found the vessel already loaded with all tools, equipment, and supplies necessary for the crane retrieval mission. While in transit, Teaver surveyed the tools and equipment aboard the ship that would be used in the upcoming assignment. He also met with representatives from Seatrax and NOVA to discuss the project and how it would be performed.[2] Prior to the vessel's arrival at the platform, Teaver ate and rested at his bunk. Upon arrival at Mariner's platform, Teaver participated in another meeting attended by the Seatrax crew and NOVA's "company man" in which they discussed the plan for the upcoming job. This meeting took place aboard the vessel because the Mariner platform's living quarters were off limits due to an

---

[1] Plaintiff, in his motion to remand, erroneously presumes without support that Seatrax chartered, leased, or owned the vessel.

[2] Production Quest, Inc. was known as NOVA at the time of the incident. It is not clear from the record what role either entity played.

outbreak of staph infections.  Accordingly, the Seatrax crew were not allowed to enter the rig's living quarters, remaining instead aboard the vessel they rode in on for quartering purposes.

On the morning of June 22, work began after a safety meeting.  The Seatrax employees received their respective job duties for the crane retrieval project.  Work began at 7:30 a.m. with part of the Seatrax crew working from the vessel and the other part working from the platform in order to offload the necessary tools and equipment from the vessel to the platform. After the Seatrax crew positioned the tools and equipment on the platform, the crew was then able to begin the demobilization of the Seatrax portable crane located aboard the platform. Approximately thirty minutes into this process, a co-employee of plaintiff unexpectedly removed a pin from the bridal block, causing Teaver to be jerked from the top of a gang box and thrown violently approximately nineteen feet and slammed into a steel padeye on the support leg of the crane.[3] Robert Teaver sustained serious injuries and a permanent spinal cord injury resulting in paralysis from the waist level down.  Thus, less than 24 hours into his first work assignment, Teaver had suffered an injury while employed by Seatrax.  According to the record, Teaver spent approximately the first twelve hours of his first full day of

---

[3] It appears from Plaintiff's affidavit that he was aboard the platform when he sustained his injuries.

employment with Seatrax aboard the vessel, *Cheramie*.

On April 16, 2010, pursuant to the savings to suitor's clause, Plaintiff filed suit in the Twenty- Fifth Judicial District Court for the Parish of Plaquemines, State of Louisiana, under the Jones Act, the general maritime law, and Louisiana law against Seatrax, Mariner, NOVA, and one of NOVA's employees.

On May 20, 2010, Defendant, Mariner, removed the case. On June 18, 2010, Plaintiff filed a motion to remand the proceedings back to state court. On July 27, 2010, Mariner and Seatrax filed their oppositions to Plaintiff's motion to remand and, on August 2, 2010, Plaintiff filed his reply.

**THE PARTIES' ARGUMENTS:**

The determinative issue in this case is whether or not Teaver is a Jones Act seaman. The Supreme Court has described a two-prong test for this determination: (1) the employee's duties must have contributed to the functioning of the vessel or to the accomplishment of its mission; and (2) the employee must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. <u>Chandris, Inc. v. Latsis</u>, 515 U.S. 347, 368 (1995).

Teaver argues that he is a Jones Act seaman and that he has met both of the <u>Chandris</u> prongs. With regards to the first prong, Teaver characterizes the activities he performed on the

vessel, which include attending meetings, berthing, and eating, as activities directly related to the functioning of the *Cheramie* (Mot. to Remand 12-13). Teaver asserts that the fact that he had to sleep aboard the vessel on the night of June 21 due to the unavailability of quarters on the platform strengthens his importance to the *Cheramie's* mission accomplishment. Id. Furthermore, he argues that the vessel's purpose was to "transfer the crew and their tools and equipment to the Mariner platform to disassemble and remove the portable crane and return them all to shore" (Id. at 13). As such, his duty as a crane operator made Teaver an integral component of the vessel's stated mission and purpose. Id.

In addressing the second prong, Teaver points to the Fifth Circuit guideline that an employee seeking Jones Act seaman status must be able to demonstrate that he spends at least thirty percent of his work in service of a vessel in navigation. See Roberts v. Cardinal Servs., Inc., 266 F.3d 368, 375 (5th Cir. 2001). Incorporating this guideline into his argument, Plaintiff argues that, due to the unforeseen injury, he spent closer to one hundred percent of his time aboard the *Cheramie* while working for Seatrax.[4]

Teaver submits that it is abundantly clear that he was a

---

[4] The *Cheramie* was not owned or chartered by Seatrax. See Ex. B to Mariner Energy's Mem.

5

Jones Act seaman at the time of this accident. However, at worst, he submits that, when viewing the evidence in a light most favorable to the plaintiff, he has presented a "colorable" Jones Act claim against Seatrax. As such, the Court should remand this matter.

Defendant Mariner asserts that Teaver is not a Jones Act seaman because his connection to the *Cheramie*, was not substantial enough to sustain a finding of Jones Act seaman status. Mariner refutes Teaver's contention that he was a member of the *Cheramie's* crew. Rather, Teaver was an employee of Seatrax, whose principal business activities in this instance dealt with the decommissioning of a crane. Seatrax neither owned nor chartered the *Cheramie*. Rather, Mariner had time chartered the vessel since March 2006.[5] Although not brought up by any of the parties, it is unlikely that Mariner's sole purpose of maintaining the time charter for approximately more than three years was for transporting Seatrax workers to the platform in order to perform missions related to a Seatrax crane.[6]

As to the first prong of the <u>Chandris</u> test, Mariner asserts that Teaver's activities aboard the vessel, which included riding to the platform, eating, sleeping, and participating in meetings

---

[5]<u>See</u> Ex. B to Mariner Energy's Mem.

[6]Because this was a time charter, Mariner was not the employer of the crew. The charter document stated that the vessel owner would provide the crew.

6

regarding work to be done on the platform, are insufficient to show any kind of substantial connection to the functioning of the *Cheramie* or to the accomplishment of its mission of transporting personnel and equipment to and from Mariner's platform. Mariner also points out that Teaver fails to meet the second <u>Chandris</u> prong of having a substantial connection to a vessel in navigation by refuting Teaver's assertion that he was a member of the *Cheramie*'s crew because his employer, Seatrax, neither owned nor chartered the vessel (Mariner's Mem. at 6).

Mariner likens the fact pattern here to the "floating hotel" situation described in <u>Hufnagel v. Omega Services</u>, 182 F.3d 340 (5th Cir. 1999), where the Fifth Circuit held that a rigger who had been assigned to work on a platform, but ate, slept, stored equipment, and attended meetings aboard a vessel attached to and alongside the platform was not a Jones Act seaman. The <u>Hufnagel</u> rigger was injured aboard the platform and brought claims against his employer, the vessel owner, and the platform owner in Louisiana state court alleging claims under the Jones Act, general maritime law, and state tort law. Defendants removed the case, alleging that the plaintiff had fraudulently pled the Jones Act claim. After considering plaintiff's motion to remand, the district court concluded that the undisputed evidence demonstrated that the plaintiff was not a seaman and that the Jones Act was not a bar to removal. The Fifth Circuit

7

found the district court's denial of plaintiff's motion to remand was correct under the given circumstances. Id. at 345.

Defendant Seatrax also submitted a memorandum opposing Plaintiff's motion to remand that largely parallels Mariner's arguments. In their memoranda, both Defendants cite jurisprudence from Louisiana's Eastern District supporting a rejection of Teaver's classification as a Jones Act seaman: Brown v. Performance Energy Services, L.L.C., No. 08-852, 2009 WL 152505 (E.D. La. Jan. 20, 2009) (holding that a rigger working on a platform who was injured on an attached liftboat used as a living quarters was not a Jones Act seaman, despite the fact that his job duties included cleaning, painting, and maintaining the gangway of the vessel); Bolden v. Superior Energy Services, LLC, No. 03-2478, 2003 WL 22835965 (E.D. La. Nov. 25, 2003) (holding that a wireline operator who performed some work on a platform while standing on a lifeboat adjacent to the platfrom was not a Jones Act seaman); Carr v. Fab-Con, Inc., Nos. 99-1964, 99-1981, 1999 WL 622959 (E.D. La. Apr. 16, 1999) (holding that a welder, injured on a barge serving as a cafeteria, workplace, and hotel, which was situated alongside a platform, performing work consisting of fabricating pipe for use on the platform, was not performing a function related to the navigation, maintenance, or voyage of the barge and was not a Jones Act seaman).

**DISCUSSION:**

### A. Jurisdiction

The primary issue here is whether or not Teaver is a Jones Act seaman. Jones Act claims are non-removable and, under the savings to suitors clause, the seaman-Plaintiff has the option of pursuing his Jones Act claim in either state or federal court. See Burchett v. Cargill, Inc., 48 F.3d. 173, 175 (5th Cir.1995). If Teaver is indeed a Jones Act seaman, he has the discretion and the right of seeking a remedy in state court; Defendant's removal in this instance would then be improper. However, if Teaver is clearly not a Jones Act seaman, then Defendant's removal to this Court is proper because the Outer Continental Shelf Lands Act ("OCSLA") would confer federal subject matter jurisdiction to Teaver's claim.

Importantly, "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." Burchett, 48 F.3d at 175 (quoting Lackey v. Atlantic Richfield Co., 990 F.2d 202, 207 (5th Cir.1993)). A Jones Act claim is removable if it is fraudulently pled. See Burchett, 48 F.3d at 175. While a district court should not pre-try a case to determine removal jurisdiction, the court may use a "summary judgment-like procedure" to dispose of the assertion that the Jones Act claim was fraudulently pled. Hufnagel, 182 F.3d at 345-46 (citing Burchett, 48 F.3d at 176). The court may deny a motion to remand where, but only where resolving all disputed

facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits. <u>Hufnagel</u>, 182 F.3d at 345-46.

**B. Jones Act Seaman Determination**

A Plaintiff seeking classification as a seaman for the purposes of the Jones Act must meet the two essential requirements set forth in <u>Chandris</u>. 515 U.S. 347. First, his duties must contribute to the functioning of the vessel or to the accomplishment of its mission. Second, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. <u>Harbor Tug and Barge Co. v. Papai</u>, 520 U.S. 548, 554 (1997) (citing <u>Chandris</u>, 515 U.S. at 368).

Although it is unnecessary that a seaman aid in navigation or contribute to the movement of the vessel, the seaman must be doing the ships's work. <u>Chandris</u>, 515 U.S. at 357 (citing <u>McDermott Int'l, Inc. v. Wilander</u>, 498 U.S. 337, 355 (1991)). In <u>Chandris</u>, the Supreme Court elaborated on the purpose of the Jones Act's connection requirement, which was to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers whose employment does not regularly expose them to the perils of the sea." <u>Chandris</u>, 515 U.S. at 368.

The Fifth Circuit uses a general rule of thumb that an employee seeking Jones Act seaman status must be able to demonstrate that he spends at least thirty percent of his work in service of a vessel in navigation. Roberts, 266 F.3d at 375. The Supreme Court has also pointed that "courts should not use a 'snapshot' test for seamen status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." Chandris 515 U.S. at 363.

The situs of the injury is not determinative of an employee's seaman status, i.e., a seaman may suffer an injury onshore yet not lose his status as a Jones Act seaman. Rather, the key factor is the employee's status with regards to a vessel at the time of the accident. Id. at 359-60.

Teaver does not meet the first prong of the Chandris test because he did not contribute to the functioning of the vessel. Teaver was not employed by the shipowner nor by the charterer. The fact that his employer provided him with space on a vessel that transported him to his workplace (the site of the crane) where he berthed, ate, discussed work-related matters, and inspected the tools that Seatrax employees would use to disassemble the crane are insufficient to show that Teaver contributed to the functioning of the vessel or the accomplishment of its mission. Rather, these facts indicate that

11

Teaver was a passenger on a vessel provided by Mariner. Even if he had been able to meet the first prong of <u>Chandris</u>, Teaver also fails to demonstrate that he meets the second prong of having a substantial connection with the vessel. Teaver's affidavit and the record as a whole show that Teaver and the rest of the Seatrax employees used the *Cheramie* as transportation to their workplace. Again, they were merely passengers on a vessel chartered by Mariner for a purpose broader than Seatrax's crane maintenance mission.

It is proper here for the Court to deny Plaintiff's motion to remand because there is no reasonable possibility for resolving the disputed facts and ambiguities in current substantive law in favor of Plaintiff's establishment of a Jones Act claim.

### C. OCSLA

OCSLA provides federal subject matter jurisdiction for cases involving injuries occurring on platforms on the outer continental shelf. Plaintiff claims that his injuries involved negligence and unsafe conditions aboard Mariner's platform, which is located in South Marsh Island 136B on the outer continental shelf. Therefore, Teaver's claims are governed by OCSLA and federal subject matter jurisdiction is present regardless of the citizenship of the parties, which makes Defendants' removal of the case to this Court proper. See <u>Hufnagel</u> 182 F.3d at 349-350.

Under OCSLA, state law serves as "surrogate federal law" and Teaver may seek relief on his state law claims. See id.

Therefore, this Court concludes that Plaintiff is not a Jones Act seaman for the reasoning set forth above. Accordingly, it is **ORDERED** that Plaintiff's **Motion to Remand (Rec. Doc. 7)** is **DENIED** and that his state law claims brought under Louisiana state law will govern his claims in this Court because of jurisdiction conferred by OCSLA.

New Orleans, Louisiana, this 23rd day of August, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE