UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


TEAVER                                    CIVIL ACTION

VERSUS                                    NO: 10-1523

SEATRAX OF LOUISIANA, INC.                SECTION: "J" (5)
ET AL.

**ORDER AND REASONS**

Before the Court are Defendants Nova Technical Services, Ltd. ("Nova") and Corey Sauce ("Mr. Sauce")'s **Motion for Summary Judgment (Rec. Doc. 200)**, Plaintiff's opposition thereto **(Rec. Doc. 205)**, and Nova and Mr. Sauce's reply to same **(Rec. Doc. 216)**.[1] Additionally, per the Court's request, both parties have submitted supplemental briefs **(Rec. Docs. 218, 219)**, which the Court has considered as well. Defendants' motion was set for hearing on February 27, 2013, on the briefs without oral argument. The Court, having considered the motion and memoranda

---

[1] Defendant Alford Services, Inc. ("Alford") also filed a reply to Plaintiff's opposition (Rec. Doc. 210). Alford's reply takes no position with respect to the instant motion; however, it notes that it objects to statements by the Plaintiff that Alford does not contest certain facts concerning its participation in the underlying events.

1

of counsel, the record, and the applicable law, finds that Defendants' motion should be **DENIED** for the reasons set forth more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This action arises out of personal injury claims made under general maritime law and Louisiana state law. On May 18, 2010, Plaintiff, Robert Teaver ("Mr. Teaver"), filed this action in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines, naming as Defendants Seatrax of Louisiana, Inc. ("Seatrax"), Mariner Energy, Inc. ("Mariner"), Nova, and John Doe, the hypothetical employee of Nova. Defendants removed the action to this Court on May 20, 2010.[2]

On January 5, 2011, Plaintiff filed his First Amended Complaint adding Mr. Sauce, a Nova employee, as a Defendant. Plaintiff's complaint alleges that Nova and Mr. Sauce were hired by Mariner to oversee the project management and safety operations and/or inspections on the Mariner platform. Compl.,

---

[2] On June 18, 2010, Plaintiff filed a motion to remand the case to state court arguing that removal was improper because, in addition to general maritime law and Louisiana state law, Plaintiff had also sought recovery under the Jones Act. Pl.'s Mot. to Remand, Rec. Doc. 7. On August 23, 2010, this Court denied Plaintiff's motion, finding that he was not a Jones Act seaman and that federal jurisdiction existed under the Outer Continental Shelf Lands Act. Order, Rec. Doc. 17. On December 2, 2010, this Court dismissed Plaintiff's claims against Seatrax as a matter of law. Order, Rec. Doc. 28. However, subsequent thereto, Alford, Alford's employee Bruce Alexander, Nova, Corey Sauce, and Mariner filed third party complaints against Seatrax bringing them back into the litigation. Rec. Docs. 114, 117, 120, respectively.

Rec. Doc. 1-3, p. 6, ¶ 18. Likewise, on October 25, 2011, Plaintiff filed his Third Amended Complaint adding Alford Services, Inc. and Bruce Alexander as Defendants.

In general, Plaintiff alleges that he was injured on June 22, 2009, while working as an employee for Seatrax, a crane operator and installer, to dismantle a crane located on an offshore platform owned and operated by Mariner. Specifically, Plaintiff was thrown approximately nineteen feet and slammed into a steel padeye on the support leg of the crane when the bridle block that his safety line was secured to fell, taking Plaintiff with it. Plaintiff reports that he sustained serious injuries and a permanent spinal cord injury resulting in paralysis from the waist down.

On January 16, 2013, Nova and Mr. Sauce filed the instant Motion for Summary Judgment. Plaintiff responded in opposition on February 19, 2013. Nova and Mr. Sauce replied on February 28, 2013. The parties supplemental briefs were submitted on March 19, 2013.

## THE PARTIES' ARGUMENTS

In their motion, Nova and Mr. Sauce assert that they cannot be held liable for Plaintiff's injuries because Seatrax was solely responsible for safely disassembling the crane. Nova and

Mr. Sauce explain that Nova was hired by Mariner to provide personnel to oversee the crane disassembly process and to serve as Mariner's representative on the platform, i.e. as the "company man." Nova reports that it assigned Mr. Sauce to serve in this role. Nova and Mr. Sauce contend that in Mr. Sauce's role as a company man, his responsibilities were limited to "watching, monitoring, observing and reporting back to Nova as to what was happening on the project on a day to day basis." Defs.' Mem. in Supp. of Mot. for Summ. J., Rec. Doc. 200-1, p. 5. They assert that Mr. Sauce was not tasked with any direct supervision of the Seatrax crew's work, and that Mr. Sauce did not exercise operational control over the Seatrax employees at any time during the disassembly process . Furthermore, they contend that Mr. Sauce was also "not the person considered by Mariner to be the medic/clerk/safety representative on this job." Defs.' Mem. in Supp. of Mot. for Summ. J., Rec. Doc. 200-1, p. 8.

In light of these facts, Nova and Mr. Sauce argue that under Louisiana law, they cannot be held liable because they did not owe a duty to Plaintiff. They contend that they had no contractual relationship with Plaintiff which would give rise to a duty, and that they owed no tort duty to Plaintiff. Specifically, Defendants assert that under Louisiana law, a

principal and its company man are not liable for the negligent acts of an independent contractor unless the company man/principal exercised operational control over the work practices of the independent contractor. Nova and Mr. Sauce argue that the contract between Mariner and Seatrax as well as the deposition testimony in this case make it clear that at no point did Mariner and/or Mr. Sauce, acting on Mariner's behalf, retain or exercise such control. Therefore, Nova and Mr. Sauce contend that this Court must dismiss Plaintiff's complaint against them as a matter of law.

In response, Plaintiff asserts that Mr. Sauce and Nova had a duty to monitor Plaintiff's safety, and/or that there are material issues of fact as to whether Nova and Mr. Sauce had a duty, thereby precluding summary judgment. Specifically, Plaintiff contends that Mariner contracted with Nova to provide project managers for its platform. Plaintiff contends that part of the project manager's responsibilities was to implement all of Mariner's safety policies. As part of those responsibilities, Plaintiff asserts that Mr. Sauce was responsible for monitoring general safety on the platform. Plaintiff alleges that Mr. Sauce failed to do so and, therefore, is liable to Plaintiff. In support of this argument, Plaintiff points to Jack Leezy ("Mr.

Leezy")'s 30(b)(6) deposition on behalf of Mariner as well as Mariner's safety manual. Plaintiff asserts that Mr. Leezy stated that Mr. Sauce was a project manager and was responsible for the safety of operations on the platform. Likewise, Plaintiff notes that Mariner's safety manual requires that all Project Managers be responsible for safety. Thus, Plaintiff contends that Mr. Sauce had a contractual duty to account for Plaintiff's safety. Likewise, Plaintiff also argues that Mr. Sauce and Nova's representatives directly dispute these facts; therefore, Plaintiff asserts that the Court cannot grant summary judgment because there are material facts in dispute.

Alternatively, Plaintiff also asserts that Mr. Sauce exercised operational control over Plaintiff and Seatrax, thereby assuming a duty for Plaintiff's safety and liability for Plaintiff's negligence. In making this argument, Plaintiff specifically points to the fact that Mr. Sauce directed Seatrax employees as to where to place equipment on the platform prior to the dismantling of the crane, and also to the fact that Mr. Sauce "demanded that the toolbox meeting taking place on the platform be halted, so he could be present at the toolbox meeting." Pl.'s Opp., Rec. Doc. 205, p. 16. Thus, Plaintiff asserts that Nova and Mr. Sauce's motion for summary judgment should be denied.

In response to Plaintiff's argument that Nova and Mr. Sauce were contractually obligated to ensure Plaintiff's safety, the Court requested that both parties provide it with any contracts governing the employment relationship between Nova, Mr. Sauce, and Mariner. Both parties responded by informing the Court that no written contract and/or Master Service Agreement existed between the parties at the time of Plaintiff's accident. In their supplemental brief, Defendants argue that precisely because no written agreements existed, they were not required to oversee safety operations for Mariner. Defendants contend that they were never provided with the safety manual referenced by Plaintiff, and that Mariner's own representative testified that without a Master Service Agreement, employees could not be beholden to Mariner's safety policies.[3] Thus, Defendants contend that as a

---

[3] Defendants specifically point the Court toward the following exchange:

A.  Companies or contractors going to work for Mariner Energy have to, in theiry MSA's, Master Service Agreement, there is always a clause in there, it states, that your employees shall be trained and knowledgeable of Mariner's safety policies . . . .
Q.  Okay, Now, you said that in MSA's it states that employees should be trained according to Mariner's safety?
A.  Yes.
Q.  What if a contractor was out there without a written MSA? How would Mariner insure that Mariner's safety policies were put into effect?
A.  I guess you wouldn't.

Def.'s Supp. Brief to Mot. for Summ. J., Rec. Doc. 219, p. 2 (quoting Def.'s Ex. 3 to Supp. Brief, to Mot. for Summ. J., Rec. Doc. 219-3, pp. 35-36.

matter of law they did not owe Plaintiff a duty of care.

In his supplemental brief, Plaintiff also notes that no written Master Service Agreement existed at the time of Plaintiff's accident. Therefore, Plaintiff contends that the Court must determine the parties' intent from the evidence presented through Mariner's and Nova's corporate representatives. As such, Plaintiff asserts that the deposition testimonies demonstrate that there is a factual dispute between Nova and Mariner as to the scope of Mr. Sauce's job duties. Accordingly, Plaintiff asserts that there are material issues of fact that preclude this Court from making a summary judgment finding.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide

Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325.

The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

Pursuant to § 1333(2)(A) of OCSLA, Plaintiff's negligence claim is governed by the law of the state adjacent to that portion of the seabed where he was injured—in this case, Louisiana. Louisiana has adopted a "duty-risk analysis" to be applied in determining whether liability exists under the facts of a particular case. Mundy v. Dep't of Health and Human Res., 620 So.2d 811, 813 (La.1993). Under the duty-risk analysis, the plaintiff must prove: 1) the conduct in question was a cause in fact of the harm; 2) defendant owed a duty of care to plaintiff; 3) that duty was breached; and 4) the risk of harm was within the scope of protection afforded by the duty breached. Id. Further, whether a duty is owed by the defendant to the plaintiff is a question of law. Id. As a result, Plaintiff's claim will only survive a motion for summary judgment if, as a matter of law, he can prove that Nova and Mr. Sauce owed him a duty of care, or he can show that there are material issues of fact in dispute as to

whether Nova and Mr. Sauce owed him a duty of care.

The Court finds that there is a genuine factual dispute concerning the scope of Nova/Mr. Sauce's duties and, therefore, whether Nova/Mr. Sauce owed Plaintiff a duty of care. Specifically, there is a question as to whether Nova/Mr. Sauce assumed a contractual duty to ensure Plaintiff's safety by acting as a project manager for Mariner. This question arises from a plain reading of Mariner's Offshore Safe Operating Procedures Manual ("Safety Manual") which states, in pertinent part, that project managers are responsible for understanding and complying with safety procedures, establishing safeguards, ensuring that personnel are trained in Mariner's safety policy, and monitoring areas for compliance with the safety procedures. Because Mariner and Nova had not executed a written Master Service Agreement at the time of Plaintiff's accident, the Court can only look to deposition testimony to determine the scope of Nova/Mr. Sauce's duties and whether he owed a duty of care to Plaintiff.

Mr. Sauce and Nova have testified that they did not assume a duty to ensure Plaintiff's safety. They assert that Nova was hired by Mariner to provide a company man whose job consisted of being "the eyes and ears for [Mariner] to watch, monitor and report the progress of specific scopes of work, tasks, projects."

11

Defs.' Ex. E to Mot. for Summ. J., Rec. Doc. 200-6, p. 3, lns. 11-15. They contend that this job did not involve a safety component and, in fact, Mr. Sauce reports that he was never even provided with a copy of Mariner's safety manual. Defs.' Ex. F to Mot. for Summ. J., Rec. Doc. 200-7, p. 6, lns. 7 - 15 ("Q. [] When you worked for Mariner through Nova, were you required to be familiar with Mariner's safety manual? A. Never seen it."). To the contrary, Mr. Leezy, the corporate representative for Mariner, has testified that Mr. Sauce was hired as a project manager, and that as a project manager Mr. Sauce was responsible for safety. Pl.'s Ex. 3 to Opp., Rec. Doc. 205-3, pp. 23 - 24 ("Q. [] Corey Sauce was the . . . consultant, and he met the definition of project manager, correct? A. Yes, sir. . . . Q. But isn't [Corey Sauce] the one responsible for implementing all of Mariner's safety policies? A. He is."). As such, the Court cannot say definitively one way or the other whether Nova/Mr. Sauce assumed a duty to provide for Plaintiff's safety.

Although the Defendants contend that it is well settled under Louisiana law that a principal cannot be liable for the negligent acts of an independent contractor, the Court notes that it is also well settled that "where a person voluntarily undertakes to perform a task, he thereby assumes the duty to

12

exercise reasonable care in the performance of that task." In re FEMA Trailer Formaldehyde Prods. Liab. Litig., --- F. Supp. 2d ----, MDL No. 07-1873, 2012 WL 137803, at *13 (E.D. La. Jan. 18, 2012). Thus, the Court finds that there is a genuine issue of material fact concerning whether Nova and Mr. Sauce owed a duty to Plaintiff in this case, which precludes summary judgment.[4] Accordingly,

**IT IS ORDERED** that Defendant's motion is **DENIED**.

New Orleans, Louisiana this 27th day of March, 2013.

*[signature]*

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[4] The Court also notes that it is aware that Mr. Leezy testified that he "guesses" that Mariner would not be able to ensure that its employees put its safety policies into effect if it does not have a Master Service Agreement with them. Nevertheless, the Court finds that this fact does not weigh one way or the other in determining whether or not Nova/Mr. Sauce had a duty to put Mariner's safety policies into effect. Just because Mariner could not ensure that Nova/Mr. Sauce would implement its policies, it does not necessarily follow that Mariner did not charge them with that duty through whatever type of oral contract that they negotiated in the first place.